UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FT. MYERS DIVISION

CASE NO.:

BRAEBORNE BEHRGHUNDI, an individual,

      Plaintiff,

vs.

COMMUNITY RESOURCE NETWORK OF FLORIDA LLC, a Florida limited liability company, f/k/a COMMUNITY RESOURCE NETWORK OF FLORIDA INC., a Florida corporation, a/k/a COMMUNITY RESOURCE NETWORK INC., and COLE CARUSO, an individual, and COMMUNITY RESOURCE NETWORK HOLDINGS, LLC, a Delaware limited liability company,

      Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, BRAEBORNE BEHRGHUNDI, an individual, files this Verified Complaint against the Defendant, COMMUNITY RESOURCE NETWORK OF FLORIDA LLC, a Florida limited liability company, formerly known as COMMUNITY RESOURCE NETWORK OF FLORIDA INC., a Florida corporation, also known as COMMUNITY RESOURCE NETWORK INC. ("CRN"), COLE CARUSO, an individual ("Caruso"), and COMMUNITY RESOURCE NETWORK HOLDINGS LLC, a Delaware limited liability company ("CRNH"), seeking damages and equitable relief, and as grounds therefor, alleges as follows:

## INTRODUCTION

1.     CRN entered into a Consulting Agreement with Plaintiff on or about September 1,

2015 ("Agreement").

2.  Through the Agreement, CRN agreed to pay to Plaintiff $7,500.00 per month, in two payments of $3,750.00, every calendar month for a period of ten (10) years ("Monthly Payments"). The total payment Plaintiff is to receive over the ten (10) years is $900,000.00.

3.  CRN and Plaintiff also agreed that upon "sale of all or substantially all of the assets or ownership interest" in CRN, CRN would make a lump sum of the entire balance remaining to be paid to Plaintiff.

4.  CRN did, in fact, sell all or substantially all of its assets or ownership interest in CRN to CRNH. However, CRN did not pay to Plaintiff the total amount remaining to be paid pursuant to the Agreement.

## JURISDICTIONAL ALLEGATIONS

5.  This Court has jurisdiction pursuant to 28 U.S.C. §1332, diversity jurisdiction, with an amount in controversy of more than $75,000.

6.  Venue is proper in this Court because Defendants, CRN and Caruso are residents of the city of Fort Myers, Florida, which is located within the Middle District of Florida.

7.  Plaintiff, BRAEBORNE BEHRGHUNDI, is a resident of the West District of Texas and is otherwise *sui juris*.

8.  Defendant, COMMUNITY RESOURCE NETWORK OF FLORIDA LLC ("CRN"), is a Florida limited liability company with its principal place of business in Fort Myers, Florida.

9.  CRN is a successor entity to Community Resource Network of Florida Inc., a Florida corporation, which is sometimes referred to in the Agreement as "Community Resource Network Inc.".

10. Defendant, COLE CARUSO ("Caruso"), is an individual resident of Naples, Florida, and otherwise *sui juris*.

11. Defendant, COMMUNITY RESOURCE NETWORK HOLDINGS LLC, is a Delaware limited liability company, with its principal place of business in Naples, Florida.

12. All conditions precedent or actions necessary to the filling of this action have occurred, been taken, waived or excused, such that this case is properly before the Court and ripe for judicial review.

## FACTUAL ALLEGATIONS

13. CRN was a Medicaid Waiver Provided and State Medicaid Provider in the business of delivering an array of continuing care and support service to individual with developmental disabilities and their families in Florida.

14. Payments from the federal government and/or state payments reimbursed by the federal government provided a primary source of income for CRN.

15. Plaintiff and CRN entered into a 10-year Consulting Agreement. A true and correct copy of the Consulting Agreement is attached hereto as Exhibit "A".

16. CARUSO signed the Agreement on behalf of CRN.

17. The Agreement provides, in pertinent part:

   a. The term of the Agreement is 10 years. (Paragraph 2).

   b. CRN shall pay to Plaintiff the sum of $7,500 per month, payable twice per month. (Paragraph 5.1).

   c. CRN could terminate Plaintiff's services at any time. (Paragraph 6.1).

   d. If CRN terminates Plaintiff's services other than for cause/breach, CRN must continue to make payments for the remainder of the Agreement's term.

(Paragraph 6.4(b)(i)).

e. If there is a "sale of all or substantially all of the assets or ownership interest in the Company" within 10 years following the effective date of the Agreement, Plaintiff is entitled to "receive in a lump sum the total amount that Consultant would have received if this Agreement remained in place through the end of the Term", minus payments previously made. (Paragraph 6.4(b)(iii)).

18. On or about August 30, 2017, CRN terminated Plaintiff's services and such termination was without cause.

19. Consistent with its obligations pursuant to the Agreement, CRN continued to make monthly payments to Plaintiff over the subsequent two (2) years.

20. However, in September, 2019, CARUSO undertook a series of actions intended to wrongfully deprive Plaintiff of the obligations of CRN and fraudulently deprive Plaintiff of the money owed to him pursuant to the Agreement.

21. CRN and CARUSO conspired with CRNH to accomplish this fraudulent course of action.

22. First, without notice to Plaintiff, on or about September 5, 2019, CRNH was formed as a Delaware limited liability company.

23. Second, without notice to Plaintiff, on or about October 10, 2019, CARUSO alerted CRN's customers that CRN's ownership has changed to add a "strategic partner" by November 1, 2019.

24. Third, without advance notice to Plaintiff, on or about October 18, 2019, CARUSO formed Community Resource Network of Florida Parent Inc., which, upon

information and belief, was done for the sole purpose of avoiding CRN's compliance with its payment obligations pursuant to the Agreement.

25. Fourth, without notice to Plaintiff, on or about October 29, 2019, CARUSO formed CRN and converted the original "Inc." to the present "LLC".

26. Fifth, without notice to Plaintiff, on or about November 7, 2019, CARUSO sold/transferred ownership interest in CRN to CRNH.

27. CARUSO sold/transferred 100% of his ownership interest in CRN to CRNH, and in return, CARUSO received 30% ownership interest in CRNH.

28. This sale/transfer ultimately triggered CRN's obligation to pay the full remaining balance of the Consulting Payments to Plaintiff.

29. Plaintiff has been required to retain the services of the undersigned counsel for the purpose of prosecuting this action.

## COUNT I
## BREACH OF CONTRACT
### (CRN)

30. Plaintiff readopts and re-alleges paragraphs 1 through 29 as if fully set forth and incorporated herein.

31. Plaintiff and CRN entered into an agreement.

32. CRN breached that Agreement by failing to pay Plaintiff the total balance due under the Agreement upon sale of all or substantially all of CRN's assets.

33. Plaintiff has suffered damages as a direct and proximate result of CRN's breach.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in Plaintiff's favor, plus attorney's fees pursuant to the Agreement, costs, prejudgment interest and all other relief this Court may deem just and proper.

INTERNATIONAL LAW PARTNERS LLP
2122 Hollywood Blvd., Hollywood, FL 33020; PH: (954) 374-7722; FX: (954) 212-0170

## COUNT II
## FRAUD AND FRADULENT TRANSFER
### (All Defendants)

34. Plaintiff readopts and re-alleges paragraphs 1 through 29 as if fully set forth and incorporated herein.

35. Plaintiff is a creditor of CRN pursuant to the Agreement.

36. CRN is a debtor of Plaintiff pursuant to the Agreement.

37. CARUSO and CRN made representations to Plaintiff that CRN intended to comply with the Agreement.

38. However, they knew or should have known these representations were false and they had no intention of paying Plaintiff the full value of the Consulting Payments.

39. Defendants transferred ownership in CRN to the "strategic partner(s)" under the guise of a new entity, to wit: CRNH.

40. Defendants also transferred all or substantially all of the assets of CRN.

41. Defendants conspired to create these transfers, among a series of transactions, which would ultimately result in CRN's avoidance of the debt to Plaintiff.

42. Defendants conducted these transfers to hinder, delay and defraud Plaintiff relating to the debt owed to Plaintiff.

43. If the transfers are permitted to continue, Defendants would succeed in achieving what they intended to achieve; depriving Plaintiff from the money he is owed.

44. Plaintiff has suffered damages as a direct and proximate result of Defendants' actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in Plaintiff's favor, plus attorney's fees pursuant to the Agreement, costs, prejudgment interest and

all other relief this Court may deem just and proper.

                Respectfully submitted,

                **INTERNATIONAL LAW PARTNERS LLP**
                *Attorneys for the Plaintiff*
                2122 Hollywood Blvd.
                Hollywood, FL 33020
                PH: (954) 374-7722
                FAX: (954) 212-0170

                By:  */s/YASIR BILLOO*
                      **Yasir Billoo**
                      Florida Bar No. 718351
                      ybilloo@ilp.law

# VERIFICATION

STATE OF  Texas          )
                         ) SS.:
COUNTY OF McLennan       )

I, BRAEBORNE BEHRGHUNDI, having personally appeared before the undersigned Notary Public, do on my oath depose and state that:

1. I make this verification on personal knowledge.

2. I have read the allegations of the foregoing Verified Complaint and I hereby declare that they are true and correct to the best of my knowledge and information.

_____
BRAEBORNE BEHRGHUNDI

*Braeborne Behrghundi*

BEFORE ME, the undersigned Notary Public, personally appeared ~~Heather Nesbitt~~ who is personally known to me and who verified the foregoing under oath.

SWORN TO AND SUBSCRIBED before me, this  14  day of July, 2020.

_____
Notary Public

CJ Bagby
_____
Print Name
My Commission Expires:

C J BAGBY
NOTARY PUBLIC
STATE OF TEXAS
ID # 13139922-6
My Comm. Expires 01-05-2022

INTERNATIONAL LAW PARTNERS LLP

EXHIBIT "A"

## CONSULTING AGREEMENT

This Consulting Agreement ("the Agreement") is entered by COMMUNITY RESOURCE NETWORK, INC. ("Company") and BRAEBORNE BEHRGHUNDI ("Consultant") (collectively referred to as the "Parties") on the 1 day of September, 2015.

WHEREAS, the Company is a Medicaid Waiver Provider and State Medicaid Provider that is in the business of delivering an array of continuing care and support services to individuals with developmental disabilities and their families in numerous counties in Florida ("*Care Provider*");

WHEREAS, Consultant is in the business of providing assistance and guidance in the delivery of continuing care and support services to individuals with developmental disabilities and their families, including but not limited to, assistance and guidance in the delivery of services through Medicaid; and

WHEREAS, the Company desires to engage the services of Consultant to assist the Company in delivery of continuing care and support services to individuals with developmental disabilities and their families, including but not limited to, assistance and guidance in the delivery of services through Medicaid; and the Consultant desires to render those services to the Company, all in consideration for the mutual promises set forth herein:

1. **Effective Date**. This Agreement shall become effective upon the last date either party signs it.

2. **Term of Consultancy**: The term during which the Consultant shall provide Services to the Company hereunder shall commence on the Effective Date and shall continue for a period of One Hundred and Twenty (120) months (the "*Term*") unless terminated earlier pursuant to Section 6 below. It is understood that either the Company or the Consultant may terminate their respective obligations under this Agreement pursuant to Section 6 below, subject to Section 6.4, and such termination shall in no way be construed as a breach of this Agreement.

3. **Consulting Services**. Consultant will provide certain consulting services as the Company shall require (the "*Services*"), on average, thirty (30) hours per week relating to preparation of annual reports of and service for justification of med waiver services. The Parties acknowledge that these are approximates and the amount of Services required may vary from month to month. For the avoidance of doubt, the Services do not include personal care services for Medicaid/managed care ("*personal care services*"). If the Company requests Consultant to perform personal care services, Consultant shall bill the Company separately, and Company shall pay Consultant on an hourly basis at an hourly rate to be mutually agreed upon, plus reimbursement of out-of-pocket expenses of the type and amount as previously reimbursed to

Page **1** of **12**



7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx

Consultant in relation to such personal care services, in accordance with the normal policies of the Company upon presentation of appropriate receipts and other evidence of such expenses. The Consultant shall use his best efforts to perform the Services (and personal care services, if any are requested), faithfully and effectively. The Company will not prescribe the means and methods by which the Consultant performs the Services (and personal care services, if any are requested) and the Consultant shall be free to exercise his discretion and professional judgment in the performance of Services (and personal care services, if any are requested) hereunder. However, the Consultant agrees to perform the Services (and personal care services, if any are requested) in a professional and ethical manner, in accordance with the generally accepted industry practices and principals and in accordance with all applicable laws and regulations.

It is mutually understood and agreed that the Consultant is not an employee, owner, shareholder or agent of the Company. For all purposes, including federal and state tax purposes and the application of federal wage and hour laws, the Consultant will work for the Company as an independent contractor and not as an employee. The Company will not withhold state or federal employment taxes (i.e. income tax or FICA) from sums becoming payable to the Consultant hereunder. The Consultant agrees to report monies received from the Company to all taxing authorities as required by law and to fully and exclusively satisfy all tax liabilities that are created as a result of monies paid under this Agreement. The Consultant further agrees to defend, hold harmless and indemnify the Company against any tax liability, penalty, or interest claimed as a result of the Consultant's failure to satisfy such liabilities and/or as the result of monies paid to the Consultant hereunder. The Consultant shall not make any representations to being an employee, owner, shareholder or agent of the Company; provided, however, that Consultant may represent that he is affiliated with the Company in the ordinary course of his provision of the Services.

4. **Reporting Responsibilities.** During the Term, the Consultant shall report to and comply with directives of the CEO and President of the Company.

5. **Fees and Reimbursement.**

Section 5.1. **Consulting Fee.** During the Term, the Company shall pay for the Consultant's Services at the rate of Seven Thousand Five Hundred Dollars ($7,500.00) per month, payable in two equal installments of Three Thousand Seven Hundred and Fifty Dollars ($3,750.00) each month for the Term (the "*Consulting Fee*"). The Consultant agrees that he shall not be entitled to and shall not make any claim against the Company for any benefits from the Company and shall not be covered by any benefit plans administered or maintained by the Company. The Consultant further agrees that he shall not be entitled to any other payment or consideration from the Company, its officers, directors, owners or employees other than those expressly set forth in this Agreement.

Page **2 of 12**

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx

Section 5.2.  <u>Expense Reimbursement</u>.  During the Term, the Company shall pay directly or reimburse the Consultant monthly for reasonable out-of-pocket expenses incurred by the Consultant in performing Services under this Agreement in connection with the business of the Company in accordance with the normal policies of the Company and upon presentation of appropriate receipts and other evidence of such expenses.  The Company shall pay any outstanding reimbursements within thirty (30) days after presentation of appropriate receipts and other evidence of such expenses.

6.  **<u>Termination</u>**.

Section 6.1.  <u>Termination by the Company</u>.  Subject to the provisions of Section 6.4, the Company may terminate the Consultant's Services at any time and for any reason during the Term.

Section 6.2.  <u>Termination due to Death or Disability of Consultant or Cessation of Business</u>.

(a)  <u>Death or Disability of Consultant</u>.  The engagement of the Consultant hereunder shall terminate automatically upon the death or Disability of the Consultant.  For purposes of this Agreement, "Disability" shall mean a physical or mental infirmity that prevents the performance of all or substantially all of the Consultant's duties hereunder, with or without accommodation, lasting either for a period of ninety (90) consecutive days or for a period of more than one hundred twenty (120) days in any twelve (12)-month period.  The good faith determination of the Company's CEO and President of Disability shall be final, binding and conclusive.

(b)  <u>Cessation of Business.</u>  The Parties acknowledge that the Company's continued viability is critically impacted by factors beyond the control of the Company, including but not limited to continued funding of the Medicaid Waiver and Family Waiver programs for persons with Developmental Disabilities at current levels, regulatory changes, and the continued involvement of its President and CEO, Cole Caruso.  If 1) the Company ceases to do business as a result of the death or disability of Cole Caruso, or 2) the Company, in the sole and good faith determination of its CEO and President, determines that it can no longer continue operating as a viable Care Provider due to factors beyond its control, including but not limited to changes in Medicaid funding, changes to the Fair Labor Standards Act ("FLSA") or the interpretation and/or enforcement of FLSA as it pertains to the Company's business, the engagement of the Consultant hereunder shall terminate automatically as of the date that the Company ceases to do business as a Care Provider. This subpart is not intended to allow the Company to cease doing business for the primary purpose of avoiding liability to Consultant for Consulting Fees under the terms of this Agreement.

Section 6.3.  <u>Termination by the Consultant</u>.  The Consultant may terminate the provision of Services by the Consultant under this Agreement at any time and for any reason during the Term by providing the Company with at least thirty (30) days' advance written notice

Page **3** of **12**

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx



of such termination; provided that the Company may, in its sole discretion, waive such notice requirement.

Section 6.4.   Payments Upon Certain Terminations.

(a)   Payment for Consulting Fees Earned but Unpaid and Accrued but Unpaid Business Expenses. Upon termination of Consultant's Services for any reason, the Company shall pay to Consultant: 1) any Consulting Fee earned but unpaid through the date of termination (determined on a pro-rata basis), and 2) any accrued but unpaid business expenses incurred but unpaid through the date of termination. If the Consultant is terminated by the Company as a result of a Breach of this Agreement (as defined below), the Consultant shall be entitled to the payments listed in this Section 6.4 (a) (1) and (2) only through the date of the Breach.

(b)   In addition to the payments described in Section 6.4(a):

(i)   Payment Upon Termination by Company in Absence of Breach. In the event that the Company terminates the Consultant's Services during the Term for any reason pursuant to Section 6.1 *other* than a Breach of this Agreement by Consultant (as defined below), the Company shall continue to make payments of Consulting Fees to the Consultant through the end of the Term.

(1) Breach. The following shall constitute a Breach of this Agreement by Consultant: failure to perform the Services during the Term as set forth in Sections 3 and 4 of this Agreement; performance of the Services on behalf of the Company during the Term in a manner that materially harms the Company; a breach of the provisions contained in Sections 3, 4, 5, 7, 8, 11 or 13.2 of this Agreement; or any intentional act or omission of Consultant during the Term which materially harms the Company.

(2) Notice and Opportunity to Cure Certain Breaches. Before terminating this Agreement for a Breach as defined above *except for a breach of the provisions contained in Sections 7 or 8*, the Company shall provide Consultant with ten (10) days' notice and opportunity to cure. The parties acknowledge and agree that this Notice and Opportunity to Cure provision does not apply to a breach of the provisions contained in Sections 7 or 8.

(ii)   Payment Upon Termination Upon Disability or Death. In the event that the Consultant's Services are terminated during the Term upon the Disability or Death of the Consultant pursuant to Section 6.2 (a), the Company shall continue to make payments of the Consulting Fee to the Consultant, or the Consultant's estate, until the next anniversary of this Agreement (as measured from the Effective Date) or the end of the Term, whichever comes first. For example, if the Effective Date is September 1, 2015 and the terminating event occurs on December 31, 2020, payment would continue through September 1, 2021, but if the terminating event occurs on July 30, 2025, payment would continue only through September 1, 2025 (the end of the Term).

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx



Section 7.2.   Nonsolicitation.  During the Term and for a period of one (1) year following the termination of the Consultant's Services for any reason (including the end of the Term), the Consultant shall not directly or indirectly through another Person (other than on behalf of the Company) (a) induce or attempt to induce any employee or officer of the Company to leave the employ of, or terminate its affiliation with, the Company, or in any way interfere with the relationship between the Company and any such Person, (b) hire or seek any business affiliation with any Person who was an employee or officer of the Company within one year after such Person ceased to be an officer or employee of the Company, or (c) induce or attempt to induce any customer, supplier, licensee or other business relation of the Company to cease doing business with the Company or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company.

Section 7.3.   Additional Acknowledgments.  The Consultant represents to the Company that the restrictions contained in this Section 7 and Section 8 are critical and necessary to protect the Company's legitimate business interests (including the protection of its Confidential Information); are reasonably drawn to this end as to duration, place, and scope; are not unduly burdensome; are not injurious to the public interest; are supported by adequate consideration; and that his agreement to abide by such restrictions is made in order to induce the Company to retain or continue to retain the Consultant's Services. It is expressly understood and agreed that although the Consultant and the Company consider the restrictions contained in this Agreement to be reasonable, if a final judicial determination is made by a court of competent jurisdiction that the time period or geographic scope or any other restriction contained in this Agreement is invalid or unenforceable for any reason, the provisions of this Agreement shall not be rendered void but shall be deemed reformed or modified only to the extent necessary to render them valid and enforceable in all respects. Alternatively, if any court of competent jurisdiction finds that any restriction contained in this Agreement is unenforceable, and such restriction cannot be amended so as to make it enforceable, such finding shall not affect the enforceability of any of the other restrictions contained herein.  The Consultant further represents and warrants to Company that the Consultant has not taken any actions in the twelve (12) months preceding the Effective Date of this Agreement (during which time the parties were negotiating the terms of this Agreement) that would violate the restrictions contained in Sections 7 and 8 of this Agreement had they been in effect at that time.  The Company represents that it is not aware of any actions taken by the Consultant in the twelve (12) months preceding the Effective Date of this Agreement that would violate the restrictions contained in Sections 7 and 8 of this Agreement had they been in effect at that time.

8. **Confidential Information**.

(a)   Obligation to Maintain Confidentiality.  Consultant acknowledges that the continued success of the Company depends upon the use and protection of any secret, confidential or proprietary knowledge or information about the conduct or details of the Business or any other business of the Company (collectively, "*Confidential Information*"). Consultant further acknowledges that the Confidential Information obtained by him during the course of his

Page 6 of 12

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx



engagement with the Company (including any of its predecessors) concerning the business or affairs of the Company, is the property of the Company, including information concerning acquisition opportunities in or reasonably related to the Company's business or industry. Therefore, Consultant agrees that he will not disclose to any unauthorized Person or use for his own account any Confidential Information, whether or not such information is developed by him, without the Company's prior written consent, unless and to the extent that the Confidential Information (i) becomes generally known to the public other than as a result of Consultant's acts or omissions to act or (ii) is required to be disclosed pursuant to any applicable law or court order. Consultant shall take reasonable and appropriate steps to safeguard Confidential Information and to protect it against disclosure, misuse, espionage, loss and theft. Consultant shall deliver to the Company upon his termination or at the end of the Term, whichever occurs first, or at any other time the Company may request, all memoranda, notes, plans, records, reports, computer tapes, printouts and software and other documents and data (and copies thereof) embodying or relating to the Confidential Information, Work Product (as hereinafter defined) or the business of the Company (including, without limitation, all acquisition prospects, lists and contact information) which he may then possess or have under his control.

(b) <u>Ownership of Property</u>. Consultant acknowledges that all discoveries, concepts, ideas, inventions, innovations, improvements, developments, methods, processes, programs, designs, analyses, drawings, reports, patent applications, copyrightable work and mask work (whether or not including any confidential information) and all registrations or applications related thereto, all other Confidential Information and all similar or related information (whether or not patentable) that relate to the Company's (including their predecessors) actual or anticipated business, research and development, or existing or future products or services and that are conceived, developed, contributed to, made or reduced to practice by Consultant (either solely or jointly with others) while engaged by the Company (or its predecessors), including any of the foregoing that constitutes any Confidential Information or records ("*Work Product*"), belong to the Company, and Consultant hereby assigns, and agrees to assign, all of the above Work Product to the Company. Any copyrightable work prepared in whole or in part by Consultant in the course of his work for any of the foregoing entities shall be deemed a "work made for hire" under the copyright laws, and the Company shall own all rights therein. To the extent that any such copyrightable work is not a "work made for hire," Consultant hereby assigns and agrees to assign to the Company all right, title, and interest, including without limitation, copyright in and to such copyrightable work. Consultant shall perform all actions reasonably requested by the Company's President and CEO, at the Company's sole expense, to establish and confirm the Company's ownership (including, without limitation, assignments, consents, powers of attorney, and other instruments) in Work Product and copyrightable work identified by the Company's President and CEO.

(c) <u>Third Party Information</u>. Consultant understands that the Company will receive from third parties confidential or Confidential Information ("*Third Party Information*") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During Consultant's engagement with the Company and thereafter, and without in any way limiting the provisions of Section 8(a) above, Consultant will hold Third Party Information in the strictest confidence and will not disclose to anyone (other



than personnel and consultants of the Company who need to know such information in connection with their work for the Company) or use Third Party Information, except in connection with his work for the Company, unless expressly authorized by the Company in writing.

9. **Severability and Non-Exclusivity**. Any claim by the Consultant that the Company is in breach of this Agreement shall not excuse the Consultant from complying in full with any obligations of the Consultant under this Agreement, including Sections 7 and 8 hereof. If any of the provisions contained in this Agreement, including without limitation the rights and remedies enumerated herein, is hereafter construed to be invalid or unenforceable, the same shall not affect the remainder of the covenant or covenants, or rights or remedies, which shall be given full effect without regard to the invalid portions.

10. **Specific Performance.** The Consultant acknowledges and agrees that the Company's remedies at law for a breach or threatened breach of any of the provisions of Sections 7 and 8 would be inadequate and, in recognition of this fact, the Consultant agrees that, in the event of such a breach or threatened breach, in addition to any remedies at law, the Company, without posting any bond, shall be entitled to obtain equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction or any other equitable remedy which may then be available. If the Company establishes that the Consultant has breached this Agreement, the Company shall be entitled to receive its reasonable attorney's fees and costs incurred as a result of its seeking to enforce this Agreement, included but not limited to attorney's fees and costs incurred before filing suit and in any appeal.

11. **Indemnification**. The Consultant shall be liable for all of his acts and omissions arising out of his performance or non-performance of this Agreement and shall indemnify, defend, and hold the Company, its officers, directors, owners, employees, and other agents harmless from any and all claims, damage or loss, including attorney's fees, arising out of such acts or omissions. The Company shall be liable for all of its acts and omissions arising out of its own performance or non-performance of this Agreement and shall indemnify, defend, and hold the Consultant harmless from any and all claims, damage or loss, including attorney's fees, arising out of such acts or omissions.

12. **All Prior Agreements Superceded**. This Agreement is intended to replace and supersede any other agreement or arrangement that the Parties may have had, and any other agreement or arrangement discussed or contemplated by or on behalf of the Parties.

13. **Miscellaneous**.

    Section 13.1. Survival. To the extent necessary to give effect to such provisions, the provisions of this Agreement shall survive the termination hereof, whether such termination shall be by expiration of the Term or otherwise.

    Section 13.2. Relationship of the Parties. The Parties acknowledge and agree that Consultant is an independent contractor of the Company. No relationship of employer/employee shall result from the execution of this Agreement or from the performance of any of the services

Page **8** of **12**

7588554.1



hereunder. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

Section 13.3. <u>Assignment</u>. Consultant may not assign this Agreement. The Company may assign its rights, together with its obligations, under this Agreement (i) to any affiliate or subsidiary or (ii) to third parties in connection with any sale, transfer or other disposition of all or substantially all of its business or assets.

Section 13.4. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with respect to: a) the Company, b) obligations of the Company and/or its officers, directors, shareholders and owners to Consultant, and c) the matters specifically referred to herein, and supersedes any and all prior agreements, whether written or oral. There are no promises, representations, inducements or statements between the Parties other than those that are expressly contained herein. No other agreement relating to the terms of Consultant's consultancy with the Company, oral or otherwise, shall be binding between the Consultant and the Company or any other party unless it is in writing and signed by the party against whom enforcement is sought. Consultant acknowledges that he is entering into this Agreement of his own free will and accord, and with no duress, that he has read this Agreement and that he understands it and its legal consequences.

Section 13.5. <u>Waiver</u>. Waiver by any party hereto of any breach or default by the other party of any of the terms of this Agreement shall not operate as a waiver of any other breach or default, whether similar to or different from the breach or default waived. No waiver of any provision of this Agreement shall be implied from any course of dealing between the Parties or from any failure by either party hereto to assert its or his rights hereunder on any occasion or series of occasions.

Section 13.6. <u>Notices</u>. Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered personally, by courier service, by registered mail, return receipt requested, or by facsimile or email and shall be effective upon actual receipt by the party to which such notice shall be directed, and shall be addressed as follows (or to such other address as the party entitled to notice shall hereafter designate in accordance with the terms hereof):

If to the Company:

Cole Caruso, President
Community Resource Network of Florida
PO Box 368
Estero, FL 33929
Telephone: 239-297-0746
cole@crnflorida.com

with a copy to:

Sonia M. Diaz
Coleman, Hazzard & Taylor, P.A.
2640 Golden Gate Parkway, Suite 301
Naples, FL 34105
Telephone: 239-298-5211
sdiaz@chtlegal.com

If to Consultant:

Braeborne Behrghundi
4300 W. Waco Drive, #B2-160
Waco, Texas 76710
Telephone: 239-246-2305
braeborne@gmail.com

Section 13.7. <u>Amendments</u>. This Agreement may not be altered, modified or amended except by a written instrument signed and notarized by each of the Parties hereto.

Section 13.8. <u>Construction.</u> The preparation of this Agreement has been a joint effort of the Parties and the Agreement shall not, solely as a matter of judicial construction, be construed more severely against one of the Parties than the other. Paragraph headings are inserted herein for convenience, do not constitute a part of this Agreement, and shall not be admissible for the purposes of proving the intent of the Parties.

Section 13.9. <u>Counterparts</u>. This Agreement may be executed in counterparts, including by facsimile or email, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

Section 13.10. <u>Withholding</u>. Any payments provided for herein shall be reduced by any amounts required to be withheld by the Company under applicable Federal, State or local income or other tax laws or similar statutes or other provisions of law then in effect.

Section 13.11. <u>Disputes</u>. Each party irrevocably submits to the jurisdiction of any Florida or Federal court in any action or proceeding provided for to enforce the provisions of this Agreement or with respect to enforcement of any judgment upon the award rendered by the arbitrators, and hereby waives the defense of inconvenient forum to the maintenance of any such action or proceeding.

Section 13.12. <u>Choice of law and venue</u>. This Agreement shall be governed by the laws of the State of Florida, without reference to principles of conflicts or choice of law under which the law of any other jurisdiction would apply. Venue for any court action arising out of this Agreement shall be exclusively in Collier County, Florida or the Fort Myers Division of the United States District Court for the Middle District of Florida, and the Parties hereby consent to the jurisdiction of such courts.

Page 10 of 12

7588554.1





Section 13.14. <u>Waiver of Jury Trial</u>. Each party knowingly and voluntarily waives trial by jury in any action, proceeding or counterclaim brought by either of the Parties against the other. Said waiver is effective as to all matters, including but not limited to any matters arising out of or in any way connection with or related to this Agreement, any preliminary negotiations, or the relationship of the Parties.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer and Consultant has hereunto set his hand as of the day and year first below written.

COMMUNITY RESOURCE NETWORK, INC.

By: _____  9/10/15
   Cole Caruso, its President    Date

STATE OF FLORIDA
COUNTY OF __Lee__

The foregoing instrument was acknowledged before me this 10th day of September 2015, by COLE CARUSO, who (__) is personally known to me or (X) has produced Drivers License as identification and who took an oath.

(SEAL)                               _____
                                     Notary Public

                                     Gabriela Rosas
                                     Notary Printed Name

                                     Commission Number:
                                     Commission Expires:

GABRIELA ROSAS
MY COMMISSION #FF140570
EXPIRES July 10, 2018
(407) 398-0153    FloridaNotaryService.com

Page **11** of **12**

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx

BRAEBORNE BEHRGHUNDI

_____  9-5-2015
                         Date

STATE OF Texas
COUNTY OF McLennan

The foregoing instrument was acknowledged before me this 5 day of September, 2015, by BRAEBORNE BEHRGHUNDI, who ( ) is personally known to me or (X) has produced drivers license as identification and who took an oath.

(SEAL)

RACHAEL OLIVIA TEFFS
MY COMMISSION EXPIRES
December 2, 2018

_____
Notary Public

_Rachael Teffs_
Notary Printed Name

Commission Number:
Commission Expires: December 2, 2018



Page **12** of **12**

7588554.1

m:\community resource network\word file\memos\final_ behrghundi consulting agreement hlp 5-20-15 (bb.revisions).smd.edits.8.12.15.docx

